Thank you, Your Honor. In fact, Mr. Fong and I had a nice visit in our travels from Medford to Portland yesterday. And I'll remind you it's 10 minutes each side. Right. This case presents the following principle. Every person, regardless of their ability to read or understand English, should receive notice of the contents of the warrant to search their home at the outset of the search or at least when they ask to know what is going on and why the agents are searching. Service or... Is that that you've just stated, your position? Do you base that on the Fourth Amendment reasonableness? Yes, Your Honor, I do. So your interpretation of reasonableness is they have to be read it if they do not speak English. Now, you said Spanish, but I guess Hungarian or Albanian or whatever, it isn't the language. You're saying reasonableness under the Fourth Amendment, a person must be read it in a language they understand at the time before the search or when? At the outset, Your Honor, or at least when they ask. When they ask. Mm-hmm. Okay. And, yes, it doesn't matter what language or whether they can read. It should either be served upon them by handing the actual document to them or it should be read to them. Do you mean read in English? Sure. Read in English. Regardless whether they understand English. Yes, Your Honor. Given to a blind man, regardless whether he can read. In the case of a blind man, the test should be, the reasonableness would be to read it to a blind man. Suppose he's blind and dumb. What's reasonable about that? If he can't understand. You read it to him in English, he doesn't understand it. What's reasonable? Well, because, Your Honor, with the blind person, it may be a little more difficult because he doesn't, he is unable to see that an official document is being read. But, so in that context, it may not quite meet the test of providing assurance of the lawful authority for the agents to search the premises. But handing an official document or reading that official document, even if it's in a language that the occupant doesn't understand, will at least attempt and provide an opportunity to meet that one assurance. How does it, I'm not getting that. I might be missing something. But if the officer with the warrant is told by the inhabitant of the home that they don't understand English, then it seems that it's a futile exercise to read or to give a warrant in English at that point. I don't know why, if the Constitution requires, Fourth Amendment requires reasonable conduct, but why would it be reasonable, why would we say that reasonableness requires something that is entirely futile in operation? Because, at least in this case, Your Honor, there was, the record supports the fact that there was an indication from the occupants that they did not know what was going on and they requested to know what was going on. In this case, those facts are presented here. But then, well, two things. First of all, I'm not aware that there's, that the record establishes that the appellant made a specific request that the warrant be read to him before the search started. There was no finding by the trial court, but there is evidence. I thought it just, the only evidence is that he wanted to know what's going on, right, or he had a question what's going on. That was the gist of the question, yes, that he stated in English. But he didn't, he didn't understand English to read the warrant. It was, the trial court's ruling was based on the executing agent's perception that Mr. Martinez Garcia could not read the warrant. And that perception was based on some kind of indication that the agent got. From him, right? Yes, but in response to the executing agent's attempt to say he had a warrant in Spanish. So even the record doesn't support the trial court's finding that the agent had a reasonable perception that Mr. Martinez didn't speak English because the record reflects that the agent attempted to say he had a warrant in Spanish, and it was in response to that that Mr. Martinez apparently indicated he didn't understand English. That doesn't make a lot of sense. Well, if Martinez indicated that, I'm not seeing the part of it that doesn't make sense right now. Let me ask this. Are you relying solely on the Fourth Amendment? Or is there an argument based on the rules of procedure that govern federal agents' service of warrant? That was our alternative argument, Your Honors, that the Rule 41 does apply because of the involvement of the immigration officials in this search and in the execution of the search warrant in this case. Well, let me ask some questions on that then. We have a joint task force here of some type. That's correct. It's got federal immigration people and state law enforcement, I guess, interested in interdicting drugs. Now, if the state officials, in part for their own purposes, go to serve a warrant, what's your argument that they must follow Rule 41? As I understand this court's authority, they do not need to follow Rule 41 necessarily unless there is a federal agent involved. The fact that they are part of a task force that has a federal agent, I'm not aware that this court has issued authority saying that that's... What type of involvement of a federal agent is the prerequisite to requiring operation of Rule 41? I believe just being a member of the task force should be enough. But in this case, again, and I believe this should be the next test, is their involvement in the actual execution of the warrant. They were present at the debriefing. They knew they were there because they were told that they would probably find four nationals to arrest pursuant to those two searches that were authorized by the warrant. So that should be enough. What about if the state wants to prosecute in some drug case and now they haven't followed the state procedures for service because they followed the federal procedure? What happens next? In this case, that would raise an interesting question because state law requires the agents to read before the search starts. What would happen in the state case would be that defense counsel should be arguing that the Fourth Amendment requires the agents to serve, at least serve, if they violate the state rule that the Fourth Amendment still requires them to serve by way of reading or tendering the actual notice, the document that contains all the specified information at the outset. And then if they don't do that, they violated the Fourth Amendment. Here's a final question for you that's on my mind. I was under the impression that we had precedent that a violation of Rule 41 does not, unlike a violation of the Constitution, doesn't require suppression of evidence. Rule 41 has been a violation. Rule 41 does require suppression. However, there is a particular sort of good-faith test that is not quite as exacting as the Leon good-faith test that's applied, which is called deliberate disregard of the rule. And under that test, if the agent deliberately disregarded the rule and there was prejudice, then it should be suppressed. What prejudice was there? Let's suppose that Rule 41 applies. I think we do have any citations to the record that there was a deliberate attempt to evade the requirement of serving the search? Well, Your Honor, the fact that the ‑‑ I believe that the officer just made a judgment as to the language ability of Mr. Martinez-Garcia does make it a deliberate act. He purposely decided not to deliver it or read it. And so that's a deliberate act. But he was there on the scene. He had the search warrant. There's no ‑‑ And he learns that Martinez doesn't speak English. What is he ‑‑ you think it would be reasonable for him to say, well, hold on, let me go back and get a translated copy, and I'll be back in a couple of hours? I think at that point it's unreasonable for him not to at least deliver the document to him. Let's talk about that. Okay. I think of things as being reasonable or unreasonable based on whether there's a reason. What? What reason would there be for delivering a document to a man who says I can't read English? Because it looks official. And one of the reasons ‑‑ Suppose he gave him an invoice from his dry cleaner. Well, here's the second reason. And there's evidence in the record that the warrant contained the name of his brother‑in‑law, or, excuse me, his brother, which would have provided him assurance that there was some relation between himself and the authority of the agents. Mr. Martinez Garcia was not a suspect in any criminal activity, and that was the reason why he was at least asking the questions, and that's one of the reasons why the officer just made some assumptions that he would know why the officer was there, providing the document would have provided that assurance. It would have made him feel better to see his brother's name on the document. He would have known that they were there and they were legitimately there. I don't think it might have made him very nervous. I know your time is up, but I wanted to ask you a question about your Rule 41 theory, that 41 applies if there's a federal agent involved. How would you distinguish Palmer? Well, let me, in the interest of time, let me call it to your attention. Palmer was a case where the federal agent helped the state agents prepare the search warrant, went with them and participated, actually went in and secured parts of the marijuana that was there, and he was eventually tried in the federal court on a marijuana charge, and we held that that was not participation. Mere participation, we said, was not enough, and our participation there was assisting with the search warrant, going with them, and actually picking up some of the drug and taking it with them and bagging it for a subsequent prosecution. One of the things I think I recall from that case is that the federal agent's participation was characterized as having some kind of safety purpose. It was because the additional resources of the federal government were going to provide some additional safety. If I'm incorrect about that, I apologize. This case is different because INS agents, or excuse me, immigration agents, were there because they were expecting to arrest four nationals during the execution of the two search warrants. This prosecution is, it's a federal prosecution, but it's an alien in possession of a gun case. That is not a violation of state law. Those are two facts that I think distinguish this case from Fong. Thank you. Thank you very much. In police court, my name is Doug Fong, and I represent the government in this matter. It says, Google, do you ask the question of, well, when does Rule 41 apply in a circumstance such as this? And the answer is contained in United States v. Clyburn, which cites United States v. Williams. And that is if, in fact, the federal agent, if, in fact, a search warrant application would have been made at the direction or urging of a federal agent, then maybe Rule 41 applies. But in this case, we don't have that. This was strictly a state warrant for state crimes signed by a state judge. The application was made by a state officer. There were no federal, there may have been INS agents present at the briefing for the searches. But, in fact, in our specific instance, there wasn't even a federal agent at the scene when the search warrant was actually executed. Mr. Fong, didn't Agent Lozano of the INS appear 30 to 50 minutes after the warrant was commenced to be executed and do two rather significant things? One, translate the search warrant from Mr. Martinez. And two, give him Miranda warnings. That's correct, Judge. That's participation in post-search activity rather than the search itself. In the actual initial execution of the search warrant. Because I think the defendant's contention is, look, the search warrant has to be read at the outset before the search has begun. And the issue on that is, well, does the Fourth Amendment apply or does Rule 41 apply in this case? In fact, federal agents were eventually arrived at the scene at the behest of the state agents, not so much because the state agents wanted them there for immigration purposes, but mainly as a translator, as Detective Raymond testified. Because of this language barrier, the thing that Detective Raymond immediately did was to contact someone that could speak Spanish. And that happened to be the INS agents at the scene. As I understand it, the state officer attempts to serve the warrant. He's told that a felon doesn't speak English. So he makes a call to the federal INS people, to that office, and they send someone who can translate. He makes a call to the INS agent and says, please come here, we need you to translate the search warrant. Meanwhile, they proceed with the search and they find a gun. They find the gun in, I guess, an appellant's room or whatever. That's correct. And then it's on that basis that they give him Miranda warnings. That's correct. And I should also point out that this isn't just a conclusion that Detective Raymond came to. This is not just based upon his perceptions of the situation. What he testified to was that the defendant told me, communicated to me, that he did not speak English. So this is coming directly out of the defendant's mouth. Is the determination of whether this is federal involvement a factual or legal question? Judge, I think it's both a mixed question of fact and law. Tell me where our cases have said that. Well, I think the factual issue is to what extent were the federal agents involved in, say, the urging and the application of the search warrant and the execution? And so those are the facts that we present. And then the legal conclusion, the question of law is, do those certain facts constitute, are those certain facts sufficient to kick in Rule 41? Kick in. What do you mean, kick in? You mean involvement, sufficient involvement? That's right. I don't understand your argument. Palmer specifically says it's a factual determination. We followed that in Hightower. Specifically said it's a factual determination. I don't know where you get the mixed question. What case are you relying on that is a mixed question? Well, Judge, I guess what I'm saying is this, is that the trial court has to determine, makes factual findings about when, potentially makes findings about when. I'm not asking my question. I told you two cases appear to be opposite to what you're saying. I ask you, what case do you rely on that this is a legal determination, as distinguished from a factual determination? What case was my question? Judge, I guess I don't have a case in mind for that. Okay. So you might be correct that if it's strictly a factual question, I guess the real issue is do the facts presented to the trial court support a Fourth Amendment analysis versus a Rule 41? Well, the Fourth Amendment is going to be applicable, at least I think, in every case. And it's applicable whether the feds or whether the state are serving the warrant. And it seems like to me, at least, that the question is whether in addition to what the Fourth Amendment requires, here Rule 41 applies and was it followed? That's absolutely correct, Judge Gould, because potentially, particularly if you read Gantt, it could be that Rule 41 is more restrictive than the Fourth Amendment. And particularly in Gantt's word. Rule 41 can't be interpreted to cut back on the Fourth Amendment. So it can only, as you say, be more restrictive or give more protection. But am I right that there's precedent that indicates that you normally don't suppress evidence for violation of Rule 41? Judge, I think in Gantt they talk about that, and there's a whole line of cases that they cite where that certainly is the issue there. And, in fact, what Gantt says is that a suppression under Rule 41 is only applicable if the violation. Like if it's sort of bad faith to pass that. They think that what they said was deliberate. And particularly the Gantt court was particularly concerned that the government in that case had no justification for not presenting the warrant to the individual after the individual asked for it. The Gantt court didn't necessarily make a finding of prejudice, but they said, look, this is a deliberate violation without any justification whatsoever from the government. Didn't Justice Stewart in the Katz case in a footnote or something open a question whether Rule 41 would require giving the warrant at the outset? That's correct. In fact, that was addressed in Katz. But I think the Gantt court distinguished that by saying, well, that was a wiretap case and didn't really apply to the traditional application of the search warrants. However, the U.S. Supreme Court in the Groh case addressed that very same issue in a search warrant case, albeit it being a footnote. But they specifically say in that footnote, as we said in our brief, that, look, the Fourth Amendment does not require service of the warrant at the outset before giving you the search warrant. As a result, they say it has to be served in Groh sometime during the search. Well, basically they say it has to be served sometime during that process. They do say it's an open question as to if the person presents no threat and requests a copy of the warrant, whether that would be a Fourth Amendment violation. But they indicate that they're saving that for another day. In this case, Your Honors, the defense contends that this defendant asked about something. Well, let me just back you up for a minute. What are the reasons why, if someone didn't understand a warrant, the police in some case might, for safety, have to search a premises before they got a translator? If the police are going to do a drug, like a drug search at which often illegal weapons are present, if people are dealing drugs, do they have a need to search at the outset right when they get there to check for weapons? Yes. And, in fact, I guess I can't name them right off, but there are lines of cases that say the officers are at least entitled to make a protective sweep of the premises before doing all the other administrative things with the search warrant. We are not saying that that's how the gun was found in this case. In this particular case, the officers did commence the search pursuant to the search warrant in this matter. But as far as the defendant's request was, I think the record is only that the defendant's wife testified that the 14. And in response to that, Detective Raymond said, look, this is, we have a search warrant here. But he wasn't able to get any further than that. Our whole point, Your Honors, is this, is that analysis here is what was Detective Raymond's actions reasonable under the Fourth Amendment. That doesn't include just whether or not he read or failed to read the search warrant to the persons on the premises, but the entire circumstances. And that would include, for instance, the execution where the knock and announce was done properly. And that hasn't been contested. What has been contested and what nobody's mentioned so far is the claimed inadequacies of the affidavit in not telling the whole story about confidential in the form of dolement. But Judge Baird, the knock and announce was not contested in this case. The officers knocked and announced their presence and said we had a search warrant in this case. I see that my time is up. Well, you certainly can take whatever time you need to respond to Judge Baird's question or comment. What is your position? They didn't say the dolement had been had up on a bad check charge. Judge, the issue on appeal for the search warrant was whether or not Judge Hogan committed clear error in denying, actually I think their standard is, I don't remember, is the standard of review de novo. But the issue is whether Judge Hogan erred in denying the defendant's request for the Frank's hearing on the search warrant. An unlimited Frank's hearing. That's correct. He denied the Frank's hearing on one specific issue, but denied it on the rest. If you look at the defendant's plea, the defendant failed to make a substantial, any substantial preliminary showing about the issues that they raised. First, I think the main issues were who lived at the premises, what the relationships were, were they living there or were they employed there? The defendant did not present any substantial preliminary showing, any facts indicating that Detective Genesta even knew this information and intentionally or recklessly omitted that from the search warrant. Without that kind of a showing, and that's the defendant's burden, they're not entitled to a Frank's hearing. Number two, the defendants also didn't show that knowing that information and even putting that information in the search warrant would have affected probable cause. We listed numerous probable cause factors in our memorandum, which Judge Hogan, in fact, adopted and made findings about that. The defense discussed that, but the defense didn't challenge the truth of that particular information there. When you take all those factors, I think there were like nine factors there, Judge Hogan found that those factors established probable cause. And with the Frank's hearing analysis, it's if you added these other things, like the drug dealer is the defendant's brother, would that add or detract from probable cause or be established in the warrant? And Judge Hogan's finding implicitly was that it wouldn't. And so the issue on appeal with respect to the search warrant is a very narrow one. Did the defendant make the substantial preliminary showing? First, with respect to Detective Genesta's recklessness or intentional disregard, and second, whether it would affect the warrant. Thank you. Thank you. Your colleague went beyond the allotted time, for good reason, on our questioning, and so it's your lucky day. Thank you. I'll try to be brief. We'll give you three minutes for rebuttal. Just wanted to make a couple comments. One is that at the hearing, Mr. Martinez-Garcia's sister also testified that he had requested to know what was going on. That's her quote, and that's at the record at page 70. Our arguments are layered. The first is that the Fourth Amendment applies and requires the agents to serve or read the search warrant in this case, and it was presumptively unreasonable when they failed to do so after the defendant indicated he didn't know what was going on. He wanted to know what was going on, because in order to meet the test, the Fourth Amendment test, you have to at least attempt to provide some assurances, at least the first assurance of legal authority. It seems like he did attempt to serve the warrant, and he was told that I don't speak English. His actual quote, Your Honor, was just that he attempted to say he had a warrant in Spanish, and this is at page 50 of the record. He attempted to say it in Spanish, and then the question was what was Mr. Martinez-Garcia's response. Basically, he indicated he didn't speak English. Why isn't that an adequate attempt to serve a warrant? If the warrant's in English, it seems like it would serve no purpose to hand him a warrant in a language he doesn't understand. Well, I think the question is vague as to whether or not the indication that Detective Raymond got from Mr. Martinez was really about English. In fact, when Detective Raymond attempted to say he had a warrant in Spanish, it could have been that Mr. Martinez-Garcia was questioning, just saying he didn't understand at all because it was a rather unsuccessful attempt. On page 49, he indicated he did not speak English. Do you advise the defendant you had a search warrant? Yes. Question, did you ever actually have a search warrant in hand when you did that? Answer, I had the paperwork out. The orden de registro means search warrant. I have a Spanish handbook that means that. Question, so you had the search warrant out, and what did you say to the defendant? Answer, orden de registro. I understand. I mean, doesn't that meet the legitimate concern of the landowner? What's going on? The policeman says, I've got an orden de registro. I've got a search warrant. What else do you want? It was clear that he still didn't understand what was going on when he subsequently asked. What was the evidence that after being told that there was an orden de registro, he still didn't understand what was going on? Both the witnesses outside, while Mr. Martinez-Garcia was face down on the ground with handcuffs on, indicated that he was asking, what's happening? One says, what's happening? And the other says, what's going on? Those were his questions. And one of them indicated that he asked that in English. Okay. Well, thank you very much. We appreciate your argument on both sides. The case will be submitted. Thank you.
judges: Wallace, Gould, Bea